IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREN MARTINO, :
          Plaintiff :
  :
   v. : 3:CV-08-1985
  : (JUDGE VANASKIE)
ALLSTATE INDEMNITY COMPANY, :
          Defendant :

## MEMORANDUM

At issue in this matter is whether Plaintiff Karen Martino may recover first party medical benefits under an automobile policy of insurance for injuries sustained on December 20, 2003, when her vehicle was struck by a Greyhound bus. Plaintiff has brought a common law claim for breach of contract, as well as a statutory and bad faith claim under 42 Pa. Cons. Stat. § 8371, against Defendant Allstate Indemnity Company. Allstate has moved for dismissal of the bad faith claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. Entry 22.) For the reasons set forth below, Allstate's motion will be denied.

I. BACKGROUND

On December 20, 2003, at Greyhound bus struck the vehicle in which Ms. Martino was a passenger. (Am. Compl., Dkt. Entry 19., ¶ 6.) Ms. Martino alleges her injuries include a cervical strain, a lumbosacral strain, a thoracic strain, a large right-sided disc herniation at C5-6 with mass effect upon the cord, a central disc bulge at C4-5, neck and back pain, muscle spasms, radiculopathy, myelopathy and sciatica. (Id. at ¶ 6.) At the time of the accident, Ms.

Martino was the beneficiary of an automobile policy of insurance issued by Allstate.  (Id. at ¶¶ 4-5.)

Following the accident, Ms. Martino submitted a claim for first party medical benefits to Defendant Allstate Indemnity Co., which began paying for her treatment.  (Id. at ¶ 7.)  On September 21, 2005, Dr. Pamela Costello performed a C5/6 anterior cervical diskectomy with fusion and plate on Ms. Martino.  (Id. at ¶ 8.)  In March or 2006, Ms. Martino underwent treatment with Dr. Paul F. Remick.  (Id. at ¶ 9.)  In May of 2006, she also sought assistance from Drug and Alcohol Treatment Services, Inc. ("DATS") for assistance with prescription pain medication dependence.  (Id. at ¶ 10.)

On August 25, 2006, Allstate obtained a peer review report from Dr. Timothy J. Fiorillo, who concluded that none of this treatment was reasonable or necessary.  (Id. at ¶¶ 11-12.)  Dr. Fiorillo's report first recognized that Ms. Martino was involved in a motor vehicle accident on December 20, 2003, and that "[s]he gave a history of cervical disc surgery in 09/05, due to 'an injury two years prior. . . . "  (Dkt. Entry 25-2, at 1.)  He concluded that:

> Upon review of the available information and based upon a reasonable degree of medical certainty the office visits and referrals rendered by Dr. Paul Remick should NOT be considered reasonable or necessary.  The decision is based on the lack of documentation for the above noted MVA [Motor Vehicle Accident].  The subsequent referral to the Drug and Alcohol Treatment Services, Inc. should NOT be considered reasonable or necessary.  Likewise, the prescriptions for the various medications should NOT be considered reasonable or necessary.

(Dkt. Entry 25-2, at 1.)  Relying on this report, Allstate halted payment for Ms. Martino's

2

treatment by Dr. Remick, for treatment by DATS, and for her prescriptions of Suboxone, Alprazolam, Paroxetine, and Topamax (prescribed by Dr. Remick). (Am. Compl., Dkt. Entry 19, at ¶15.)

On July 16, 2007, Ms. Martino saw Dr. John DeLeon, Jr., D.C. (Id. at ¶ 16.) Allstate then obtained a peer review report from Jane L. McBride, Dl.C., who concluded:

> It is my professional opinion that none of the chiropractic care afforded Ms. Martino can be considered reasonable and necessary . . . . The patient is nearly four years post-MVA. It is my opinion that any soft tissue injuries arising from the incident would resolve prior to the initiation of chiropractic treatment in 2007. There is evidence in the file that prior to seeking treatment with Dr. DeLeon, the patient underwent extensive treatment including physical therapy and surgery to resolve her initial MVA pain complaints. There is no clinical reason as to why the patient would still require chiropractic care nearly four years post-MVA.

(Dkt. Entry 25-3, at 4.) Allstate then refused to pay for Dr. DeLeon's care, relying on Dr. McBride's report. (Am. Compl., Dkt. Entry 19, at ¶ 19.)

Ms. Martino filed suit against Allstate in the Lackawanna County Court of Common Pleas on October 3, 2008. (Dkt. Entry 1-2, at 6.)m Ms. Martino alleged she had not exhausted the limits of her insurance policy with Allstate, and that she continued to seek medical care for her injuries sustained in the December 20, 2003 accident. She alleged Allstate breached its obligation under her insurance policy and acted in bad faith in refusing to pay for her medical treatment in connection with the December 20, 2003 accident. Allstate then removed the action to this Court, and on November 5, 2008, moved to dismiss the bad faith claim. After oral argument was conducted on the motion on February 2, 2009, Ms. Martino filed an Amended

3

Complaint. (Dkt. Entry 19.)

Count One of the Amended Complaint alleges a common law breach of contract claim. (Am. Compl., Dkt. Entry 19, at 1.) In refusing to make payments for her medical bills, Allstate is alleged to have breached the terms and conditions of its insurance policy issued to Ms. Martino. (Id. at ¶ 33.) Count Two alleges a bad faith claim under 42 Pa. Cons. Stat. § 8371. Specifically, Ms. Martino alleges that Perspective Consulting, Inc., the peer review organization employed by Allstate, has provided negative and biased peer review reports to Allstate and other insurance companies, and that Allstate acted in bad faith in denying payment for medical treatment and prescriptions that were reasonable and necessary. (Id. at ¶¶ 38-48.)

On February 10, 2009, Allstate filed a Partial Motion to Dismiss, challenging the viability of Plaintiff's Statutory Bad Faith Claim. (Dkt. Entry 22). The Motion is fully briefed and ripe for resolution.

## II. DISCUSSION

### A. Standard for Rule 12(b)(6) Motion to Dismiss

The Court's task on a motion to dismiss is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief . . . ." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

Dismissal of a complaint is appropriate only if, accepting as true all facts alleged, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007) (abrogating the "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46, 78 (1957)). As a result of Twombly, Plaintiffs must now nudge their claims "across the line from conceivable to plausible." Id. To state a claim consistent with the language of Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations enough "to raise a right to relief above a speculative level." Id.

B. The Pennsylvania Bad Faith Statute, 42 Pa. Cons. Stat. § 8371

The general Pennsylvania statute authorizing recovery for an insurance company's bad faith towards an insured is codified as 42 Pa. Cons. Stat. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.

Under § 1797 of the Pennsylvania Motor Vehicle Financial Responsibility Law (the "MVFRL"), the Pennsylvania legislature set up a peer review plan by which an insurer could

5

challenge the reasonableness and necessity of an insured's treatment. Insurers were required to contract with a peer review organization ("PRO") "for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." 75 Pa. Cons. Stat. § 1797(b)(1).

Allstate argues that a bad faith claim is effectively preempted by the MVFRL. In a previous opinion, I recognized that § 1797 of the MVFRL preempts a bad faith claim under 42 Pa. Cons. Stat. § 8371 in certain circumstances.[1] I explained:

> [C]ourts have recognized that a § 8371 claim is not preempted when an insurance company's alleged malfeasance goes beyond the scope of Section 1797, or "is obviously not amenable to resolution by the procedures set forth in section 1797(b)." Seeger v. Allstate Ins. Co., 776 F. Supp. 986, 990 (M.D. Pa.1991). These situations arise when the allegations do not invoke the remedies and procedures in § 1794(b), such as a claim concerning contract interpretation, a claim of abuse of process, or a dispute over whether a motor vehicle accident caused the medical expenses. In these situations, courts have reconciled the two statutes and found bad faith claims to supplement claims under § 1797. See Schwartz, 1996 WL 189839, at *8-9.

Stephano v. Tri-Arc Financial Services, Inc., No. 3:CV-07-0743, 2008 WL 625011, at *5 (M.D. Pa. Mar. 4, 2008) As in Stephano, the issue here is whether Plaintiff's allegations fall inside or outside the PRO process.

Allstate argues that, relying on Dr. Fiorillo's report, it denied coverage because the medical treatment administered to Plaintiff was not reasonable or necessary. Such a

---

[1] For a more complete overview of these two statutes, see Stephano v. Tri-Arc Financial Services, Inc., No. 3:CV-07-0743, 2008 WL 625011 (M.D. Pa. Mar. 4, 2008)

determination, Allstate claims, necessarily falls within the PRO process as defined by 75 Pa. Cons. Stat. § 1712.[2] (Br. Supp. Mot. Dismiss, Dkt. Entry 23, at 7-8.) Plaintiff reponds by arguing that Drs. Fiorillo and McBride made a causation determination – that is, the injuries for which she was receiving treatment were not caused by the December 20, 2003 accident. She contends that a causation determination falls outside the PRO process, thus allowing her bad faith claim to proceed.

In Daumer v. Allstate Ins. Co., Civ. A. No. 91-7570, 1992 WL 57673 (E.D. Pa. Mar. 18, 1992), the court faced the identical issue under similar circumstances. In Daumer, a plaintiff claimed Allstate denied her coverage in bad faith because of a PRO determination that her treatment was not casually related to the back injuries she sustained in an automobile accident. Id. at *1. Allstate argued, as Allstate does here, that the plaintiff's claim fell within the PRO process, and that the bad faith claim was preempted by the MVFRL. Id. The court found the bad faith claim was not preempted, explaining:

> An inquiry concerning the medical necessity of a particular treatment for an injury, or whether the treatment provided conforms to professional standards of performance is conceptually distinct from the question whether that injury is causally related to a particular motor vehicle accident and, hence, is an injury covered by liability benefits, the only situation to which § 1797 applies. Nowhere in § 1797, (a) or (b), is the determination of causation, or other "coverage" issues vested in a peer review organization. Yet the causal relationship between plaintiff's back injury and an automobile accident is the issue with which we are

---

[2]Allstate did not rely solely on Dr. Fiorillo's report in disclaiming coverage, but also on the report of Jane L. McBride. Consideration of both reports is thus warranted.

7

> here concerned, and that, apparently, is the issue submitted by the defendant to the peer review organization. ( See, Exh. C to Doc. # 6, Doc. # 7, n. 2). Since peer review under § 1797(b) is, however, by explicit language limited to the question whether the treatment, etc., to which a medical bill relates is medically necessary and conforms to professional standards of performance, submission by the defendant of the causation question seems to be beyond the scope of § 1797.

Id. at *3.

The court further noted: "Indeed, application of the peer review process set forth in § 1797(b) to the legal issue of causation is anomalous. The peer review organization to which this statute refers consists of other medical providers, i.e., medical, not legal "peers". Submission and review of legal questions rather than medical questions, therefore, would not be "peer" review at all." Id. at *4; see also Seeger v. Allstate Ins. Co., 776 F. Supp. 986, 990 (M.D. Pa.1991) (noting that "Allstate is not questioning the medical necessity of the plaintiff's treatment but whether the plaintiff's medical expenses are covered at all under its policy because of a contract exclusion . . . , a legal issue which is obviously not amenable to resolution by the procedures set forth in section 1797(b)."); Schwartz v. State Farm Ins. Co., No. CIV. A. 96-160, 1996 WL 189839 , at *7 (E.D. Pa. April 18, 1996) (concluding that plaintiff's allegations that State Farm submitted the claim for a determination as to causation, among other allegations, clearly alleged that State Farm acted outside the scope of § 1797); Neun v. State Farm Ins. Co., No. CIV. A. 95-7577, 1996 WL 220980, at *3 (E.D. Pa. May 2, 1996) (where insurer challenged causation, as opposed to medical necessity or reasonableness

8

under Section 1797, Section 8371 was not preempted); Burgette v. Selective Ins. Co., No. 96-CV-824, 1998 WL 1108653, at *2 (Pa. Ct. Comm. Pl. July 17, 1998) (determination of causation outside PRO process).

In Grove v. Aetna Cas. & Sur. Co., 855 F. Supp. 113 (W.D. Pa. 1993), confronting a similar case in which defendant advanced the same argument, Judge D. Brooks Smith then a member of the Western District of Pennsylvania Court concluded:

> The facts in the case sub judice are . . . precisely the same as those considered by the Daumer court. Defendant disputes whether Grove's injuries stem from [his] 1980 auto accident. Following the reasoning of Seeger and Daumer, section 1797 does not preempt a section 8371 claim, since it is undisputed that Grove's treatment was medically necessary. The dispute is over causation: were the injuries for which Grove has submitted treatment bills caused by the 1980 accident, or by something else? Because the procedures of section 1797 apply only to PRO reviews for the purpose of determining "medical necessity," plaintiff's section 8371 claim may not be dismissed because of section 1797 preemption.

Id. at 115.

I find the reasoning of Daumer and Grove compelling, and that a similar conclusion is warranted in this matter. The principles of causation and reasonableness or necessity are conceptually distinct. Treatment for injuries may be reasonable and/or necessary, but not causally related to a certain event. It is clear from the reports of Drs. Fiorillo and McBride that they did not determine whether Plaintiff's treatment was "reasonable and necessary," but considered whether the treatment was for injuries related to her December 20, 2003 accident. Dr. Fiorillo referenced the lack of documentation arising from the injuries in view of the 2003

9

accident, and not Ms. Martino's injuries in general. Likewise, Dr. McBride was of the "opinion that any soft tissue injuries arising from the incident [2003 accident] would resolve prior to the initiation of chiropractic treatment in 2007." She then ultimately concluded that "[t]here is no clinical reason as to why the patient would still require chiropractic care nearly four years post-MVA." Obviously, Dr. McBride was considering the chiropractic care in relation to the injuries sustained as a result of the accident.

Allstate insists that the case law in this area is unsettled, so there was a reasonable basis for denying coverage, which, in turn, would preclude a bad faith claim. (Br. Supp. Mot. Dismiss, Dkt. Entry 23, at 7-8.) Allstate relies on Bodtke v. State Farm Mutual Auto. Ins. Co., 637 A.2d 648 (Pa. Super. Ct. 1994), rev'd, 659 A.2d 541 (1995). This argument is unavailing. Bodtke is a splintered opinion by a three judge panel, in which the majority, in dicta, stated that "the PRO's determination that certain injuries treated were not related to the accident is simply another way of stating that they were not medically necessary" Id. at 649. This conclusion was not integral to the outcome of the decision, and the concurring judge aggressively disagreed with the majority's conclusion. He felt the majority should not have addressed the issue and that the majority erred. He stated: "Whether treatment is medically necessary for a specified injury is an entirely different issue from whether that injury is causally related to the accident and therefore covered under the applicable policy of insurance." Id. at 650. Moreover, in Schwartz, 1996 WL 189839, at *8 n.5, Judge Marjorie Rendell, then a member of the Eastern

District of Pennsylvania Court, expressly disagreed with the majority's reasoning in Bodtke. Therefore, reliance on Bodtke, especially in light of its unpersuasive rationale and court rulings to the contrary, is misplaced.[3]

Plaintiff asserts an additional basis for a bad faith claim. She claims that Perspective Consulting, Inc., the peer review organization employed by Allstate, provided biased peer review reports to Allstate and other insurance companies in order to ensure continued business. Allstate disagrees that bias can serve a basis for a bad faith claim, arguing any bias is accounted for in, and covered by, the process prescribed by the MVFRL. (Br. Supp. Mot. Dismiss, Dkt. Entry 23, at 6.) As aptly noted by Ms. Martino, however, (see Opp'n Br., Dkt.

---

[3]Allstate claims this matter is similar to J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502, (Pa. 1993). In J.H. France, a complicated asbestos case with multiple insurers and insureds where coverage was sporadically extended over a period of more than fifteen years, the court found it could not "impute to the insurers any bad faith in contesting their obligations to defend and indemnify the asbestos-related claims presented [ ] when excessive pluralism and disparity exists in the decisions of the many courts which have entertained similar litigation." Id. at 510. The court further explained:

> There are a variety of approaches and possible conclusions to the several issues raised in this case, any of which seems reasonable from some point of view. Most of the different approaches, points of view, and conclusions are represented among the many parties in this case and the two courts below, as well as in the decisions of courts in many other jurisdictions. We do not regard the issues presented in this case as simple ones, nor are the principles underlying our decision obvious.

Id. Here, in contrast, there is one narrow issue, one insured and one insurer. Moreover, the alleged divergence in case law pointed to by Allstate does not provide a persuasive basis to deny the existence of a statutory bad faith claim.

11

Entry 26, at 6), courts have recognized that allegations of bias are not within the scope of § 1797, and fall within § 8371.  See Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559, 566 (M.D. Pa. 2008) (the allegation "that State Farm engaged a PRO that does substantial work for State Farm and thus has a financial interest in providing a biased determination, and that the PRO has continuously provided negative peer review reports to State Farm and other insurers to maintain their business . . . state[s] a claim under § 8371"); Schwartz, 1996 WL 189839, at *7 (finding that plaintiff's allegations that "State Farm selected the PRO on the basis that it was likely to secure a favorable review due to the PRO's track record [and] that the relationship between State Farm and the PRO [was] such that the PRO [had] a financial interest in making a review in State Farm's favor . . . clearly allege that the insurer acted outside the scope of § 1797.").

III.  CONCLUSION

For the reasons set forth above, Allstate's Motion to Dismiss Ms. Martino's Bad Faith Claim will be denied.  An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREN MARTINO, :
         Plaintiff :
          :
  v. : 3:CV-08-1985
          : (JUDGE VANASKIE)
ALLSTATE INDEMNITY COMPANY, :
         Defendant :

## ORDER

NOW, THIS 22nd DAY OF SEPTEMBER, 2009, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT Defendant Allstate's Motion to Dismiss Plaintiff's Bad Faith Claim (Dkt. Entry 22) is DENIED.

                                              s/ Thomas I. Vanaskie
                                              Thomas I. Vanaskie
                                              United States District Judge